NS:NEM/DGR
F.#2017R01381

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

IN THE MATTER OF THE SEARCH OF PREMISES KNOWN AND DESCRIBED AS:

(1) ONE BLACK APPLE IPHONE, WITH A CRACKED SCREEN, SEIZED FROM 320 WADSWORTH AVENUE, NEW YORK, NEW YORK, APARTMENT 5H ON JULY 29, 2018 AND IDENTIFIED ON FBI EVIDENCE LOG AS ITEM NUMBER 1B188;

(2) ONE BLACK APPLE IPHONE, WITH PLASTIC CASE, SEIZED FROM 320 WADSWORTH AVENUE, NEW YORK, NEW YORK, APARTMENT 5H ON JULY 29, 2018 AND IDENTIFIED ON FBI EVIDENCE LOG AS ITEM NUMBER 1B187;

(3) ONE RED APPLE IPHONE, SEIZED FROM 320 WADSWORTH AVENUE, NEW YORK, NEW YORK, APARTMENT 5H ON JULY 29, 2018 AND IDENTIFIED ON FBI EVIDENCE LOG AS ITEM NUMBER 1B186; AND

(4) ONE BLACK APPLE IPHONE, MODEL A1660 WITH FCC ID: BCG-E3085A,

CURRENTLY LOCATED IN THE EASTERN DISTRICT OF NEW YORK

APPLICATION FOR A SEARCH WARRANT FOR AN ELECTRONIC DEVICE

Case No. <u>19-MJ-943</u>

---

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, KAREN BROWN, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—

electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since 2015. During my tenure with law enforcement, I have participated in numerous investigations of narcotics trafficking, extortion, illegal gambling and other offenses, during which I have (a) conducted physical surveillance, (b) executed search warrants, (c) debriefed cooperating witnesses and victims, (d) reviewed and analyzed numerous taped conversations of those engaged in organized crime activities, (e) monitored wiretapped conversations and reviewed line sheets prepared by wiretap monitors; and (f) executed search warrants at locations where drugs, drug proceeds and records of narcotics transactions have been found. Through my training, education and experience, I have become familiar with (a) criminal activity, such as racketeering, money laundering, illegal gambling, extortion, and narcotics trafficking, including the manner in which illegal drugs are imported and distributed; (b) the methods of payment for such drugs and other contraband; (c) the methods used by traffickers and members of organized crime groups to launder the proceeds of narcotics trafficking and other criminal activity; and (d) the efforts of persons involved in such activity to avoid detection by law enforcement, including, but not limited to, counter-surveillance techniques, means and methods of communication, and their use of cryptic, guarded, and coded language.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4.  The property to be searched is described as:

    a.  One black Apple iPhone, with a cracked screen, seized from 320 Wadsworth Avenue, New York, New York, Apartment 5H on July 29, 2018 and identified on FBI evidence log as item number 1B188 ("SUBJECT TELEPHONE #1")

    b.  One black Apple iPhone, with plastic case, seized from 320 Wadsworth Avenue, New York, New York, Apartment 5H on July 29, 2018 and identified on FBI evidence log as item number 1B187 ("SUBJECT TELEPHONE #2")

    c.  One red Apple iPhone, seized from 320 Wadsworth Avenue, New York, New York, Apartment 5H on July 29, 2018 and identified on FBI evidence log as item number 1B186 ("SUBJECT TELEPHONE #3")

    d.  One black Apple iPhone, Model A1660 with FCC ID: BCG-E3085A ("SUBJECT TELEPHONE #4").[1]

The SUBJECT TELEPHONES are currently in FBI custody in the Eastern District of New York.

5.  The applied-for warrant would authorize the forensic examination of the SUBJECT TELEPHONES to identify electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6.  Since 2017, the FBI has been investigating, among other crimes, the distribution of methamphetamine in Flushing, New York by ANTHONY PINEDA and others.

---

[1]  SUBJECT TELEPHONE #1 through SUBJECT TELEPHONE #4 are referred to collectively herein as the "SUBJECT TELEPHONES."

7.      A confidential source ("CS #1")[2] has provided the following information. PINEDA operated multiple illegal gambling parlors in Queens, New York. In March 2018, PINEDA agreed to sell CS #1 one pound of methamphetamine for $2,500, which methamphetamine was delivered to CS #1 in California by PINEDA's brother. After CS #1 met with PINEDA's brother, the FBI recovered one large heat-sealed package containing a clear crystalline substance from CS #1. The Drug Enforcement Administration tested the substance that PINEDA arranged to sell to CS #1 and found it to be 447.6 grams of 100% pure methamphetamine.

8.      On June 14, 2018, a grand jury in the Eastern District of New York returned an indictment charging PINEDA and others with the operation of an illegal gambling parlor, distribution of methamphetamine and conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841 and 846, among other charges. See Docket No. 18-CR-302 (MKB) (EDNY). That same day, the Honorable Steven L. Tiscione, U.S. Magistrate Judge, signed an arrest warrant for PINEDA.

---

[2]     CS #1 has been a source with the FBI for approximately four years. CS #1 has pled guilty to extortion and credit card fraud, and is cooperating pursuant to a cooperation agreement with the government in hopes of leniency at sentencing. In this and prior investigations, CS #1 has provided reliable information, which has been corroborated by independent evidence, such as surveillance, witness statements, other sources of information, consensually recorded conversations and phone records. During a previous investigation, the FBI paid CS #1 to relocate CS #1 for his/her safety.

9. On June 15, 2018, the Honorable Steven L. Tiscione signed a search warrant authorizing law enforcement to employ an electronic investigative technique to determine the location of a cellular telephone used by PINEDA (the "First PINEDA Telephone").[3]

10. FBI agents attempted to arrest PINEDA on June 21, 2018. A confidential source, CS #2, observed PINEDA inside of a second floor gambling parlor in Queens, New York and alerted the FBI. The First PINEDA Telephone was also located in the area of this gambling parlor. Agents conducted surveillance of the parlor, which had only one exit. According to CS #2, at approximately 10 p.m., CS #2 overheard PINEDA saying that he could see police attempting to enter the gambling parlor. PINEDA then asked others present whether there was another exit to the gambling parlor. One individual present suggested that they could escape from the roof. CS #2 then went to the roof of the building with the others present, including PINEDA. CS #2 observed PINEDA jump to an adjacent rooftop. By the time agents entered the parlor, between approximately 10 p.m. and 11 p.m., the individuals inside had fled to the roof of the building. Once agents were able to secure the individuals on the roof, they learned that PINEDA was no longer on the roof. Agents conducting surveillance of the building's exit did not observe PINEDA leave the location. At least one other individual jumped from the roof of the building in an attempt to flee law enforcement, but that individual injured himself.

11. On or about July 19, 2018, the Honorable Debra Freeman, United States Magistrate Judge, Southern District of New York, signed a search warrant authorizing the use of

---

[3] Based on my participation in the investigation to date, I am aware that PINEDA used multiple cellular telephone numbers throughout the course of the investigation and frequently changed his telephone number.

a tracking device for a second cellular telephone used by PINEDA (the "Second Pineda Telephone").

12. On July 19, 2018, the FBI tracked the Second Pineda Telephone to an apartment located at 320 Wadsworth Avenue, New York, New York ("320 Wadsworth").

13. That day, FBI agents found and arrested PINEDA inside Apartment 5H at 320 Wadsworth. Law enforcement agents searched the apartment pursuant to a search warrant and seized, among other things, a substance that contained nearly 300 grams of pure methamphetamine, more than $27,000 in United States currency, papers with amounts of money and names written on them and three containers containing more than three kilograms of y-Butyrolactone ("GBL"). Based on my training and experience, I am aware that GBL is a prodrug[4] of GHB, commonly referred to as a "date rape drug." GBL is regulated as a List I controlled chemical. As a GHB analog, it is also treated as a controlled substance under Schedule I of the Controlled Substances Act if intended for human consumption. See https://www.deadiversion.usdoj.gov/drug_chem_info/ghb.pdf

14. On August 14, 2019, PINEDA pled guilty before the Honorable Steven L. Tiscione, United States Magistrate Judge, Eastern District of New York, to three counts of a superseding indictment, including conspiracy to distribute methamphetamine, possession of a

---

[4] A prodrug is a medication or compound that, after administration, is metabolized into a pharmacologically active drug. Inactive prodrugs are pharmacologically inactive medications that are metabolized into an active form within the body.

firearm during a drug trafficking crime and threatening physical violence in furtherance of an extortion. At his plea, PINEDA admitted that, among other things, in September 2017, PINEDA, together with others, threatened a victim ("John Doe") as part of a plan to extort John Doe.

15. On September 19, 2019, a grand jury in the Eastern District of New York returned a superseding indictment charging YUAN LI with possession with intent to distribute methamphetamine, extortion conspiracy, attempted extortion and threatening physical violence in furtherance of an extortion. I am aware that these charges relate to LI's participation in PINEDA in the September 2017 extortion of John Doe, to which PINEDA previously pled guilty, and his possession with intent to distribute methamphetamine obtained from PINEDA in or about and between August 2017 and June 2018.

16. The SUBJECT TELEPHONES are currently in the lawful possession of the FBI. All of the SUBJECT TELEPHONES were seized during the execution of a search warrant at 320 Wadsworth at the time of PINEDA's arrest. Therefore, while the FBI might already have all necessary authority to examine the SUBJECT TELEPHONES, I seek this additional warrant out of an abundance of caution to be certain that an examination of the SUBJECT TELEPHONES will comply with the Fourth Amendment and other applicable laws.

17. The SUBJECT TELEPHONES are currently in FBI custody in the Eastern District of New York and were previously held in an FBI evidence locker. In my training and experience, I know that the SUBJECT TELEPHONES have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT TELEPHONES first came into the possession of the FBI.

## **TECHNICAL TERMS**

18. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored

images. This storage media can contain any digital data, including data unrelated to photographs or videos.

   c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

   d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four

numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

        i.     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

    19.     Based on my training, experience, and research, I know that the each of the SUBJECT TELEPHONES has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

    20.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

    21.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct

evidence of the crimes described on the warrant, but also forensic evidence that establishes how each of the SUBJECT TELEPHONES was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on each of the SUBJECT TELEPHONES because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

  22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT TELEPHONES consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of each of the SUBJECT TELEPHONES to human inspection in order to determine whether it is evidence described by the warrant.

  23. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT TELEPHONES described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*Karen Brown*
Karen Brown
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on October 17, ~~2019:~~

s/ Tiscione

THE HONORABLE
UNITED STATES
EASTERN DISTRIC

14

## ATTACHMENT A

The property to be searched is described as:

a. One black Apple iPhone, with a cracked screen, seized from 320 Wadsworth Avenue, New York, New York, Apartment 5H on July 29, 2018 and identified on FBI evidence log as item number 1B188 ("SUBJECT TELEPHONE #1")
b. One black Apple iPhone, with plastic case, seized from 320 Wadsworth Avenue, New York, New York, Apartment 5H on July 29, 2018 and identified on FBI evidence log as item number 1B187 ("SUBJECT TELEPHONE #2")
c. One red Apple iPhone, seized from 320 Wadsworth Avenue, New York, New York, Apartment 5H on July 29, 2018 and identified on FBI evidence log as item number 1B186 ("SUBJECT TELEPHONE #3")
d. One black Apple iPhone, Model A1660 with FCC ID: BCG-E3085A ("SUBJECT TELEPHONE #4").

(Collectively, the "SUBJECT TELEPHONES"). This warrant authorizes the forensic examination of the SUBJECT TELEPHONES for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.  All records on the SUBJECT TELEPHONES described in Attachment A that relate to violations of 21 U.S.C. § 846 and 841 and 18 U.S.C. § 1951 and involve ANTHONY PINEDA, YUAN LI, and others, including:

    a.  lists of customers and related identifying information;

    b.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d.  any information recording PINEDA or LI's schedule or travel from January 1, 2017 to the present;

    e.  all bank records, checks, credit card bills, account information, and other financial records.

    f.  information related to the victims of any extortion;

    g.  communications related to any planned or completed extortions;

    h.  information related to the operation of any gambling parlors;

2.  Evidence of user attribution showing who used or owned the SUBJECT TELEPHONES at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.